MERCEDES AYMAT WIDOW OF CARLO, Plaintiff and Appellee, *v.* RICARTER [*sic*] TORO ASENCIO, Defendant and Appellant. RICKARTER [*sic*] TORO ASENCIO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

Nos. R-69-203, O-67-112.      Decided June 23, 1970.

*Enrique Báez García* for appellant. *Frank Vizcarrondo Vivas* for appellee.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

We are considering two petitions filed by the same person, where the same mortgage credit is involved and where an identical prescriptive issue is raised.

The first petition for review arose as a result of a judgment from the Superior Court, Mayagüez Part, which sustained an action for the recovery and foreclosure of the mortgage credit, through ordinary proceedings. The second is an administrative appeal caused by a decision of the Registrar of Property of San Germán, refusing the cancellation of its record, requested from him under the authority of Art. 388-B of our Mortgage Law.

### Petition for Review

On November 1, 1939, José Toro Martínez and his wife, owners of a house constructed on a lot of the Municipality of Cabo Rojo, mortgaged it to secure the payment of a $1,000 loan, its interest, and judicial costs, made to them by Miguel Carlo Pabón. The period agreed upon was for two years. Because the interest had been capitalized, it was stated that the secured principal amounted to $1,240, and that it would draw an annual interest of 9% from its maturity to its total pay-

ment. The encumbrance was recorded, this sum of $1,240 appearing as paid-up capital of the credit.

In February 1946 the mortgagee died testate; his widow Mercedes Aymat and several children survived him. Said mortgage credit, which had matured since November 1, 1941, according to the contract, was part of the inheritance estate. The inheritance tax was satisfied in due time.

On November 28, 1946, by public deed No. 207 of the official registry of Notary Miguel del Toro Colberg, the spouses Toro Asencio sold the encumbered urban property to "Ricarter" Toro Asencio, for the amount of $4,000, from which in the sale act "the purchaser kept the amount of $1,000 to cover and pay the mortgage in favor of Miguel Carlo Pabón, which encumbers this property." The purchaser did not fulfill this obligation.

On January 10, 1951, as the new owner of the mortgaged property, "Ricarter" Toro Asencio, through public deed No. 152, executed before the same notary, executed a second mortgage on that property in favor of Juan del Carmen Soto, as guarantee for the payment of a loan in the amount of $3,000, its interest and judicial costs. In the third paragraph of that deed the mortgagor stated:

". . . *Deponent Toro Asencio states* that his said urban property *is encumbered by a first mortgage* executed, by the previous owners, the spouses José Toro Martínez and Filomena Asencio Irizarry, in favor of Miguel Carlo Pabón, by deed number one hundred and fifty-two, executed in Cabo Rojo on November first of the year one thousand, nine hundred and thirty-nine, before Notary Miguel del Toro Colberg, originally for the amount of one thousand, two hundred and forty dollars, the loan interest at the annual rate of nine percent having been included therein for the term of the contract which was of two years, to be counted from the execution of the deed, said loan payable at the monthly rate of ten dollars at the end of all and each one of the first twenty-three months, and the remaining one thousand and ten dollars at the expiration of said term of two years, extended to one hundred and twenty dollars more for default interest, and

to one hundred twenty-five dollars more of additional credit for expenses, costs, and attorney's fees in case of judicial claim, with the rest of the conditions stated in the aforementioned deed by which said mortgage was executed and its entry in the Registry of Property; *the party hereto clarifying that this mortgage just mentioned is only effective for the sum of one thousand dollars of principal, and interest to be drawn at the annual rate of nine percent until fully paid.*" (Italics ours.)

This second mortgage was also recorded, the statements and clarifications made by the mortgagor in the mortgage deed being set forth in the registry of property.

"Ricarter" Toro Asencio did not use the money of that second mortgage to pay in full, or in part, the debt incurred by his parents in 1939, for the payment of which he had received from the latter in 1946 the sum of $1,000.

In the partition of the inheritance of the deceased mortgagee, Miguel Carlo Pabón, said first mortgage credit was adjudicated to the widow, Mercedes Aymat. By that title it was recorded in her favor. Notwithstanding the multiple steps she took through one of her sons to recover the mortgage debt, "Ricarter" Toro Asencio did not satisfy it.

On November 6, 1964, the latter presented to the registry a petition to cancel the mortgage credit for the lapse of more than 20 years of its maturity, invoking Art. 388-B of the Mortgage Law. On February 2, 1965, the registrar denied the cancellation by decision which we shall copy hereinafter, against which he did not file any appeal.

Mercedes Aymat widow of Carlo filed an action on January 18, 1967, before the Superior Court, Mayagüez Part, against "Ricarter" Toro Asencio, through ordinary proceedings, for the recovery of the principal of $1,000 of the mortgage credit, its interest, and agreed costs.

The last allegation of the complaint is as follows:

"3—That the mortgage credit in question belongs at present to plaintiff herein, Mercedes Aymat widow of Carlo, and despite the fact that the aforementioned mortgage has been overdue

for many years, defendant still owes plaintiff the sum of $1,000, principal of said debt, plus the interest thereon at the annual rate of 9% applicable to more than twenty years, *despite the multiple steps taken by plaintiff through her son, Miguel Carlo Aymat, to recover the aforementioned mortgage and its interest."* (Italics ours.)

Against the complaint defendant-debtor filed a "Motion on Prescription." Therein he requested its dismissal, alleging that ". . . the complaint was filed 5 years, 2 months, 18 days, after the expiration of the 20-year period established by the Civil Code for the prescription of mortgage foreclosure." The Mayagüez Part, after arguing said motion, dismissed it by order of December 11, 1968, on the grounds that the alleged prescription had been interrupted by the various acts of acknowledgment of the debt performed in 1946 and 1951 by the mortgagor himself.

On January 10, 1969, defendant answered the complaint on the following terms:

"ANSWER

".        .        .        .        .        .        .        .

"1. *That he accepts* that the mortgage to which this complaint refers was executed by deed No. 52 of November 1, 1939, before Notary Miguel del Toro Colberg, in the city of Cabo Rojo.

"2. *That, likewise, he accepts that ever since the deed in issue was executed, up to this moment, neither the original mortgagor nor defendant have paid any amount whatsoever for interest,* the same being owed ever since the mortgage was executed on November 1, 1939, to this date.

"3. That the interest in this case amounts to $2,610, liquidated up to November 1, 1968, plus those drawn since November 1, 1968, to this date, *but the interest which was overdue for more than twenty years and had not been paid on the date when the complaint was filed has prescribed.*

"WHEREFORE, we pray this Court, *in view of these allegations, to render the judgment which may be proper at law."* (Italics ours.)

When the case was brought for trial on its merits, on March 25, 1969, the parties submitted the case for its decision on the pleadings and certain documentary evidence which had been admitted when the prescriptive question was argued.

On July 1, 1969, the trial court, after making findings of fact and conclusions of law, rendered the following:

### "JUDGMENT·

"Wherefore, the complaint is sustained, ordering defendant to pay to plaintiff the sum of $1,000 as principal required by the complaint, plus $2,017.50 for unpaid accrued interest on said debt, reckoning from January 1947, to this date, and $125 for costs and attorney's fees agreed to in the mortgage deed in the event of judicial claim, it being ordered that if defendant fails to pay plaintiff the amounts specified above, the mortgaged property described in this judgment shall be sold at public auction for the total amount owed by defendant and any other preferred credits."

On review, defendant only maintains that the trial court erred

". . . in denying the motion on prescription filed by defendant-appellant, despite the fact that the action had prescribed, as provided by § 1864 of the Civil Code (1930) and Art. 134 of the Mortgage Law of Puerto Rico."

The trial court, upon deciding against defendant the defense of prescription, stated the following:

"From the record and from the evidence it appears that the mortgage was executed on November 1, 1939, and that it matured on November 1, 1941. The complaint was filed on January 18, 1967.

"The following also arises from the evidence: (1) In the twentieth entry of the property, performed in the Registry of Property of San Germán on January 18, 1947, by virtue of which the present owner of the property, defendant in this case, acquired through purchase from the original debtors in the mortgage covered by the present litigation, the following was set forth: 'This sale is performed for the sum of $4,000, the prop-

erty of this number, and both for $5,500, from which total sum the vendor leaves the sum of $1,000 in possession of the vendee, for the latter to cover and pay the mortgage in favor of Miguel Carlo Pabón, which encumbers this property.' (2) Subsequently, and on January 10, 1951, defendant Ricarter Toro Asencio executed a mortgage in favor of Juan del Carmen Soto, by public deed, wherein it is set forth that the 'mortgage in favor of Miguel Carlo Pabón *is* only *effective* for the amount of $1,000 of principal.'

"In the court's opinion, these actions constitute acts of acknowledgment of the debt on the part of the mortgagor, which interrupted the prescriptive term of 20 years of § 1864 of the Civil Code in connection with § 1873 of that same legal body.

"The term of twenty years granted by § 1864 of the Civil Code to the mortgage creditor to recover on the obligation by suit can only be interrupted by the commencement of the suit, by an extrajudicial demand by the creditor, or by any act of acknowledgment of the debt by the debtor. Soto v. Registrar, 51 P.R.R. 231.

"The extinctive prescription of the mortgage action having been interrupted in 1947 and 1951, the same has not prescribed, for which reason the motion for prescription filed by defendant is DENIED."

In his brief appellant alleges:

"The question to be determined is whether or not the mortgage which had matured on November 1, 1941, without any steps having been taken for its recovery and no interest having been paid, had prescribed when the complaint was filed in this case on January 18, 1967. More than 25 years elapsed from November 1, 1941 and January 18, 1967."

He makes reference to § 1864 of the Civil Code and Art. 134 of the Mortgage Law, the first of which provides that "a mortgage action prescribes after 20 years," and the second provides also that it shall prescribe after 20 years "from the time such action could have been brought in accordance with the recorded deed." He cites § 1873 of the Civil Code, fundamental provision for the decision of the appeal, the text of which is:

"Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."

Appellant sets forth that there was no interruption because: (a) the complaint was filed after the prescriptive term had completely elapsed, (b) plaintiff did not present any evidence of the creditor's extrajudicial claims and there are no legal presumptions nor inferences from the record to show that extrajudicial claims were made, and (c) the actions performed by the mortgagor in 1946 and 1951, on which the judge grounded his view of nonprescription, "do not constitute the acknowledgment of the debt mentioned by § 1873 of the Civil Code."

■ We do not agree with defendant-appellant debtor. The mortgage action brought on January 18, 1967, was always in effect since February 1, 1940, date when "in accordance with the recorded deed," it could be brought for default in payment of the first three of the 24 instalments in which the payment of the secured capital was divided.[1]

In the case at bar the prescription started to run on that day, February 1, 1940. Its course was not constant, nor free from obstacles. Neither did the creditor and his heirs, nor the mortgagor or the subsequent acquirer of the encumbered property, remain inactive during the following 20 years in regard to the debt. At least, on four definite occasions, within the respective prescriptive term, the prescription was effectively interrupted.

■ The first time, on November 28, 1946—6 years, 9 months after—by Toro Asencio's express and solemn acknowledgment of the debt. The second, on January 10, 1951 —after 4 years, 1 month of the second period—through another express and public acknowledgment on the part of Toro Asencio himself. The third, during 1964 to 1967—after 13

---

[1] *Sucrs. de Huertas González, S. en C.* v. *Díaz*, 72 P.R.R. 501, 506 (1951).

years of the third period, reckoning from January 1951—through the accepted multiple steps taken by the creditor for the recovery of the debt. The fourth and last occasion, on January 18, 1967—16 years after the second interruption and a little after the multiple steps taken for the recovery—by the formal filing in the Superior Court of the complaint for the recovery of the mortgage, through ordinary proceedings against the mortgagor, Toro Asencio.

Due to the scheme of those evident and undeniable interruptions, the extinctive prescription of the mortgage credit was never reached, fulfilled, accomplished, or produced, in its integrity.[2]

---

[2] There has been a great deal of debate over the extinction of rights and actions by the lapse of time. There is no agreement as to whether the rights or the actions to assert them actually prescribe, or whether by subsisting the rights and the actions, the so-called prescription of the same consists only in that the law empowers the inactive subject so that, relying on the lapse of time, he refuses to do what he should do when he is demanded to do so after the term of prescription has elapsed. Many jurists, among them, Albaladejo, from Barcelona, are of the opinion that the latter is the correct thesis, since after some time of inactivity of the right has elapsed, the law leaves it to the good faith of the inactive subject, withdrawing from the titleholder the power of imposing it upon the former.

Roca Sastre affirms that the vigesimal term fixed by the respective sections and articles of the Code and of the Law is the term for the prescription of the mortgage credit and not that of the mortgage isolatedly considered, nor that of the *credit* itself. He also says, citing De Buen, that those consonant provisions should be understood in the sense that the *credit secured with a mortgage* prescribes after twenty years and that they do not mean that there is a prescription of the mortgage action different from that of the credit secured by the mortgage. IV-2 *Derecho Hipotecario* 1134 (Bosch, 6th ed. 1968).

The prescription of the personal obligation for payment of money is in itself of 15 years; that of its interest, annually or in shorter periods, pursuant to § 1866 of the Civil Code, is of 5 years; that of the mortgage, as property right to secure, would be of 30 years, pursuant to § 1863 of the Code. A mercantile obligation secured by mortgage prescribes after 20 years, even though its personal action prescribes after three years. *Santini Fertilizer Co. v. Albert E. Lee & Son*, 44 P.R.R. 216, 219 (1932). When these ingredients of personal obligation and real security merge to form the complex or block figure which is the mortgage *credit*, then there is only one common term for the mortgage foreclosure and recovery, the term of

We shall deal, in the first place, with the third cause of interruption of prescription provided in § 1873, that is to say, "by any act of acknowledgment of the debt by the debtor."

■ The word *"cualquier"* ("any") indefinite pronoun which is used only before a noun, means, according to the *Diccionario de la Lengua Española, "alguno, sea el que fuere"* ("one, whatever or whichever it may be").

In the exposition of the doctrine about the Spanish Art. 1973, from which our § 1873 was taken, the Magistrate of the Supreme Court of Spain, Francisco Bonet Ramón, in his *Código Civil Comentado* (1962), states:

> "By saying 'any act,' Art. 1973 shows that it is not an act of a definite nature, but that any conduct of the inactive subject which results, directly or indirectly, in his consent to the existence of the claim, is sufficient."

We have examined the comments about that third method of interrupting the extinctive prescription. We shall state, in synthesis, the position of four Spanish jurists in regard to that matter.

Scaevola, in his work XXXII-II *Código Civil* at pp. 943–981 (1965), among other things, tells us: It suffices that the debtor acknowledges, expressly or impliedly, the other person's right; if *the act of acknowledgment emanates from the debtor*, that is what constitutes the "unequivocalness" of the act; the debtor's acknowledgment may take place at any moment, even though the credit may have already prescribed; the validity of the acknowledgment lies *in the act of acknowledging*, more than in the effective interruption derived from the acknowledgment; the debtor himself may prevent the

---

20 years.

Since 1907, in *Altuna v. Ortiz et al.*, 12 P.R.R. 318, 329, we have decided that point. There we held that the obligations derived from a mortgage contract, according to § 1865 of the Code—1864 at present—"prescribes after 20 years, which period must be understood, *not only for the recovery of the principal debt, but also for the recovery of interest, which is also collected under the same real mortgage action. . . ."*

lapse of time, in view of the inactivity of the holder of the right *acknowledging the duration* of the latter; *the important thing is the contents of the express or implied acknowledgment*, not the means of producing it; no doubt should exist that the *prescriber acknowledges the existence of the right;* it must be spontaneous.

"Moreover, *any valid act which actually implies the absolute conformity with the right of the creditor* may interrupt the latter's prescription. To this respect the explanation given by Enneccerus, is valid: *'A contract of acknowledgment or even a statement in the nature of a juridical transaction of the will to acknowledge is not required,* but *a conduct in connection with the creditor from which it may be inferred that the debtor is aware of his obligation* is sufficient.'

"*It is not necessary* for the acknowledgment to show the cause and amount of the debt, *it being sufficient that the latter is designated in such a manner that it can be identified."*

The acknowledgment should *accept the survival or exigibility of the credit or precedent debt which is acknowledged* and it should not assume the constitution of a new jural relation.

■ According to Scaevola, *the assumption of indebtedness is an acknowledgment.* We have already seen that the assumption of indebtedness was recorded in the registry of property and that the creditor's heirs took several steps to recover the money from Toro Asencio.

[5] The acknowledgment of the debt *is a unilateral act of the debtor* of abstract character, which interrupts the punitive obligation. It need not be a bilateral act between the creditor and the debtor, because then, it "may imply the liquidation of the latter (the debt) *and its substitution by another*, of a different obligatory right, even though both statements derive from the same jural relation originally entered into."

XII Manresa, *Comentarios al Código Civil Español* 954–961 (1951 ed.).

He who acknowledges the debt of his compliance reveals his will against the extinguishment of the obligation; *any*

*act which shows the implied consent to the subsistence of the obligation,* suffices.

". . . the very terms of the cited article [Spanish Art. 1973, our § 1873] show that any act of acknowledgment of the debt suffices to interrupt the prescription of actions, *no matter its kind, and let it not be said that the law* uses the word act in dealing with the acknowledgment of the obligation to show that the same must be express, on the basis that all human acts are or should be the product of a free will in consonance with its purpose and with its object, for the argument sought to be based upon said consideration would fall by the wayside, taking into consideration that there are acts of acknowledgment which may not be due to an express manifestation of the will in said sense.

*"The view of all the exponents and commentators of the law in force* is in agreement with our opinion and, therefore, we do not think there is any possible doubt over that; but, should any question arise about this point, against our assumptions, we have deemed it proper to make the foregoing indications which we consider to be sufficient to establish the real and exact signification of the provision set forth."

I-II Castán, *Derecho Civil Español, Común y Foral* (1955).

"This acknowledgment should be performed through an act which has the importance of an act proper of the person who acknowledges it; for which reason it should be legal, conscious, free, *which shows the will to acknowledge the creditor's right,* and it can be done through an explicit and direct confession through the performance of some *act which implies the acknowledgment* of the same. . . .

"The Code allows the *broad interpretation of this cause of interruption,* since it is extended *to any act of acknowledgment* of the debt by the debtor.

"May the acknowledgment be implied? It is not expressly stated in Art. 1973, as is done in Art. 1948, in regard to the acts of interruption of possession to the effect of the usucapion; but the reasons being the same and in view of the ample underlying purpose of the first of the articles cited, it is logical to apply the same rule, as Manresa thinks. A judgment of January 30, 1918 stated *that the successive assignments of a credit entered*

*in the corresponding deeds, recorded in the registry of property,
bar the prescription of the action to claim its payment,* once the
condition to the effect that its exigibility was pending, is ful-
filled. . . ."

Diez Picazo, *La Prescripción en el Código Civil* 39–137
(Bosch ed. 1964).

"The usucapion always thinks of the possessor: only the in-
terruption or the deprivation of the possession upsets the pos-
sessor's situation. *The extinctive prescription thinks always of
the holder of the right:* any activity benefits him.

"The same ideas seem to me to be applicable to the hypothe-
sis of Art. 1973. When the Code says 'any act of acknowledg-
ment of the debt by the debtor' interrupts prescription, it is not
referring to a juristic act of a special nature, as is the case in a
juristic act for the determination of a controverted compulsory
relation, or as in the case also of an act of extrajudicial confes-
sion of the debt. What it means is that the debtor who through
his words or *authoritative conduct has affirmed the existence
and life of the creditor's right,* cannot lawfully invoke prescrip-
tion. There is not, then, a unitary and homogeneous juridical na-
ture for the act of acknowledgment. There is only a series of
facts which possess a confessional value, or perhaps better, a
series of acts which a person cannot contradict by invoking the
prescription of the action directed against the same. More
clearly: if the thing sanctioned through prescription is the inad-
missibility of a late and untimely claim, *what happens is that
when through his conduct the inactive subject has shown that he
knows and expects the claim, the latter, for that same reason, is
no longer late, there is no ground to condemn it, nor to protect
the situation of trust which could have been produced in him by
the silence* of the titleholder.

"(b) Implied and express acknowledgment. . . . The acknowl-
edgment is express when it is performed through a declaration
of wilfulness of the inactive subject of the right. *This declara-
tion of wilfulness need not be delivered for the deliberate pur-
pose of acknowledging the right, and much less for the purpose
of interrupting prescription.* The act is taken in its objective
consideration, regardless of the purpose, the intention, or aim
which might have guided it. Then, from this point of view, *an*

*incidental or indirect mention of the right in a document, act, or deal performed for a different purpose,* is admissible as acknowledgment.

"By implied acknowledgment, as I said before, we do not mean the act which necessarily comprises the desire to acknowledge, *but any behavior* which, objectively interpreted in a reasonable manner, leads to the conclusion that the exercise of the exception of prescription is not in agreement with the good faith." (Italics ours.)

## Our Case Law

On several occasions this Court has cited, construed, or applied § 1873 of our Civil Code.[3] It has never attempted, because it is almost impossible, to make a catalogue of every act which the human being, or the juridical person in its case, may perform and which may be comprised within the broad

---

[3] *Diez & Arrarás v. Bascos et al.,* 5 P.R.R. 199 (1904); *The Roman Catholic Church v. The People,* 11 P.R.R. 451, 507 (1906); *Felici v. Ribas,* 11 P.R.R. 517 (1906); *Altuna v. Ortiz et al.,* 12 P.R.R. 318, 329 (1907); *Estate of Jiménez v. Ahumada,* 14 P.R.R. 283 (1908); *Gual v. Bonafoux et al.,* 15 P.R.R. 545, 549 (1909); *González v. San Juan L. & T. Co.,* 17 P.R.R. 115, 124 (1911); *Carmona v. Cuesta,* 20 P.R.R. 215, 222 (1914); *Orta v. Arzuaga et al.,* 23 P.R.R. 241, 248 (1915); *Berríos v. Dávila,* 28 P.R.R. 769 (1920); *Diez v. Green,* 32 P.R.R. (1924); *De Jesús v. De Jesús,* 37 P.R.R. 143 (1927); *Heirs of Quiñones v. Central Eureka, Inc.,* 37 P.R.R. 252, 255 (1927); *Cortés v. Valdés,* 43 P.R.R. 184 (1932); *Heirs of Gorbea v. Portilla,* 46 P.R.R. 279 (1934); *Montalvo v. Franceschi,* 48 P.R.R. 304 (1935); *Soto v. Registrar,* 51 P.R.R. 230 (1937); *Carbó v. Portilla,* 53 P.R.R. 669 (1938); *González v. Marrero,* 55 P.R.R. 812 (1940); *Ortiz v. McCormick Steamship Co.,* 57 P.R.R. 551, 553 (1940); *San Miguel, etc. & Co. v. Guevara,* 64 P.R.R. 916 (1945); *Jiménez v. District Court,* 65 P.R.R. 35 (1945); *Cruz v. González,* 66 P.R.R. 203 (1946); *Suárez v. Pereira,* 66 P.R.R. 227 (1946); *Bithorn v. Santana,* 68 P.R.R. 281 (1948); *Del Río v. García,* 70 P.R.R. 378 (1949), 71 P.R.R. 86 (1950); *Sucrs. de Huertas González v. Díaz,* 72 P.R.R. 501 (1951); *Fuentes v. District Court,* 73 P.R.R. 893 (1952); *Cordero v. Rivera,* 74 P.R.R. 548, 553 (1953); *Rossy v. Superior Court,* 80 P.R.R. 705 (1958); *Eisele v. Orcasitas,* 85 P.R.R. 84 (1962); *Baldrich v. Registrar,* 86 P.R.R. 40, 47 (1962); *Casa Jaime Corp. v. Castro,* 89 P.R.R. 686 (1963); *Secretary of Labor v. Superior Court,* 91 P.R.R. 831, 838 (1965); *Jiménez y Salellas, Inc. v. Maryland Cas. Co.,* 92 P.R.R. 200 (1965); *Ortiz Rivera v. Heirs of González Martínez,* 93 P.R.R. 549, 571 (1966); *Feliciano v. A.S.A.,* 93 P.R.R. 638 (1966); *Rosario Crespo v. W.R.A.,* 94 P.R.R. 799, 806 (1967).

language used in its last cause for interruption, that is to say: "*any act of acknowledgment* of the debt by the debtor."

It has not considered itself authorized to decide, in the light of such language, that the act of acknowledgment of the debt by the debtor should, necessarily, be *framed* as a juristic act of a special nature, or which, necessarily, comprises a desire to acknowledge, or a design or deliberate and precise purpose to interrupt the prescription; it has not established a unitary and homogenous juridical nature for the act of acknowledgment. Neither has it held that the creditor should intervene in the act or accept it, because then its effectiveness would be left to the creditor's desire and whim.

It said in *Soto* v. *Registrar*, 51 P.R.R. 230 (1937), that the assignment of a mortgage credit to a third person, without the intervention or express consent of the debtor, does not amount to an acknowledgment of the debt by the debtor. No other decision could be made, for we are dealing with an *act of the creditor*, and a creditor cannot of his own free will interrupt the prescription every time he wishes to do so, through the simple and convenient means of an assignment of credit without the debtor's intervention or consent. However, we note that Castán makes reference to a judgment of the Supreme Court of Spain, of January 30, 1918, wherein some assignments of a mortgage credit were granted, interrupting effect.

What we can certainly affirm is that this Court had never considered not one, but several, acts of acknowledgment of the debt by the debtor, as proper, clear, evident, authentic, and unequivocal, as those of the instant case.

Of course, we should not forget that the cases set forth by § 1873, imply exceptions to the general rule established in § 1861, which provides that the actions prescribe by the mere lapse of time specified by law. Because of the uncertainty it would mean to the existence and efficacy of the rights and actions, any kind of act should not be regarded as

suitable for the interruption, regardless of who performs it, when it was carried out, and which is the action or right involved.

■ Therefore, we think that in order to determine the sufficiency or the fitness of the act to interrupt, it should be observed whether or not the following conditions are present:

A—That the action to which the term of prescription fixed by law refers has been executed.

B—That the act of acknowledgment of the existence of the debt claimed has been carried out by the debtor himself, with full capacity to act, or through his legal representative or attorney, with sufficient power to perform it.

C—That said act be legal, not contrary to the laws, moral, or public order.

D—That the act be free and voluntary.

E—That the act of acknowledgment has been performed within the term of prescription.

■ In the case at bar all these conditions are obviously present. The action executed is the so-called mixed action, that is to say, real and personal action for the collection and foreclosure of a mortgage credit, to which § 1864 of the Code and Art. 134 of the Mortgage law refer.

The acts of acknowledgment of the debt were personally performed by the defendant mortgagor during the course of the public and legal execution of two public documents, before notary and witnesses, the mortgagor being a merchant, a businessman, with sufficient legal capacity to act in such executions, to all of which the notary attested.

Those acts were legal, not against the law or the moral, or the public order, they were free, voluntary, and performed within the proper term of prescription.

In a chronological manner, we shall attempt to make an analysis or a thorough objective appraisal of the acts and deeds performed by the parties interested in such juridical relations, of their particular conduct in view of the obligations

and duties respectively granted or imposed upon them, reckoning from February 1, 1940, anticipated maturity date of the mortgage credit, up to June 25, 1969, date when the trial was held.

*First Acknowledgment of the*
*Debt by the Debtor*

We know that the mortgage was executed on November 1, 1939, by the merchant José Toro Martínez and his wife Filomena Asencio Irizarry, in favor of Miguel Carlo Pabón, married to Mercedes Aymat.

As it appears from *the deed of execution* of the mortgage credit, the encumbrance was executed:

"C.—To guarantee said principal loan *for one thousand two hundred and forty dollars,* including its stipulated interest, plus default interest, in its case up to the sum of one hundred and twenty dollars. . . ."

The debt secured by mortgage would be paid according to clause "A" of the contract:

". . . within said term or two-year period to be counted from the execution of this deed in the following proportion and form of payment: ten dollars ($10) upon the maturity of each and every one of the first twenty-three months, and the remaining one thousand and ten dollars ($1,010) upon the expiration of the twenty-fourth month. . . ."

Then, the anticipated maturity for the expiration and nonpayment of "three consecutive monthly instalments" is stipulated.

According to the registry certificate admitted in evidence, in the 17th entry of the encumbered urban property it was stated that the first mortgage was executed:

". . . in surety for a loan for *one thousand two hundred and forty dollars,* as it appears from deed number one hundred and fifty-two, executed in Cabo Rojo, on November first, nineteen hundred and thirty-nine. . . ."

On November 28, 1946, after the death of the mortgage creditor, Miguel Carlo Pabón, the mortgagor and his wife sold the encumbered property, as well as another property, to their son "Rickarter" Toro Asencio, also a merchant, and according to the aforementioned certificate, the following was set forth in the public instrument:

"This sale is performed for the sum of $4,000, the property of this number and both for five thousand five hundred dollars, from the total sum of which the vendor *leaves* the sum of $1,000 *in the possession of the vendee,* for the latter to cover and pay the mortgage which encumbers this property in favor of Miguel Carlo Pabón."

### Second Acknowledgment

On January 10, 1951, the mortgage had not been paid to the heirs of Miguel Carlo Pabón, the mortgagee notwithstanding the fact that the sum of $1,000 had been left in Toro Asencio's possession to that effect upon the execution of deed No. 207 of 1946.

On January 10, 1951, the debtor requested and obtained from Juan del Carmen Soto a loan for $3,000, secured by a second mortgage on the mortgaged house. *He received that new sum, but failed to pay the first mortgage contracted by his parents.* He did not pay it or try to pay it with the sound money agreed to in that deed.

This second mortgage is legalized through deed No. 5, executed in Cabo Rojo, on January 10, 1951. The attesting notary asserted therein, that in his opinion the parties had "the legal standing necessary for this execution" and that "by virtue thereof the appearing party, Toro Asencio, freely states. . . ."

In the *First* expository paragraph, "Ricartter" stated "that he is the owner of the following property." Right after, the urban property located at Carbonell Street in Cabo Rojo is

described, property which he purchased from his parents in 1946, in part with the money of Miguel Carlo Pabón.

In the *Second* paragraph, *Notary* Miguel A. del Toro sets forth how Toro Asencio acquired the property, according to deed No. 207 of 1946, "authentic copy of which I have been presented with," and indicates the volume and folio of its recording in the registry.

But, in the *Third paragraph the Notary is not the one who states, talks, or sets forth.* The merchant, Rickártter Toro Asencio himself, does it in the following manner:

"THIRD

". . . Deponent Toro Asencio states that his said urban property is encumbered by a first mortgage executed by the previous owners, the spouses José Toro Martínez and Filomena Asencio Irizarry, in favor of Miguel Carlo Pabón, by deed number one hundred and fifty-two, executed in Cabo Rojo on November first of the year one thousand nine hundred and thirty-nine, before Notary Miguel del Toro Colberg, originally for the amount of one thousand two hundred and forty dollars, the loan interest at the annual rate of nine percent having been included therein for the term of the contract which was of two years, to be counted from the execution of the deed, said loan payable at the monthly rate of ten dollars at the end of all and each one of the first twenty-three months, and the remaining one thousand and ten dollars at the expiration of said term of two years, extended to one hundred and twenty dollars more for default interest, and to one hundred and twenty-five dollars of additional credit for expenses, costs, and attorney's fees in case of judicial claim, with the rest of the conditions stated in the aforementioned deed by which said mortgage was executed and its entry in the Registry of Property; *the party hereto clarifying that this mortgage just mentioned is only effective for the sum of one thousand dollars of principal, and interest to be drawn at the annual rate of nine percent until fully paid."* (Italics ours.)

At the end of the instrument, the notary stated that Rickártter Toro Asencio, after reading the deed, finds the

same written according *to his statements* and that *he ratifies* *"its content."*

In this clear and unequivocal statement made before a notary, before a new moneylender and before two witnesses, *on his own account, desire, and utmost free will,* the then owner of the mortgaged property and debtor of the heirs of Carlo Pabón performs a detailed acknowledgment of the existence of the mortgage debt which, in the nature of a first lien, encumbered the property which was to secure the new loan, minutely describing and enumerating the names of the persons which contracted it, the creditor, number, date, and notary of the first mortgage deed; that the same was executed *"originally for the amount of two thousand two hundred and forty dollars,* the loan interest included therein, at the annual rate of nine percent"; manner of payment, and that its last payment would be of *"one thousand ten dollars";* the extensions of the mortgage surety to the additional credits "for default interest," and for expenses, costs, and attorney's fees.

That is the precise and exact acknowledgment of the existence of the mortgage debt which the debtor made then. We repeat, *the notary was not the one* who did it.

However, the debtor, Toro Asencio, was not satisfied with that detailed acknowledgment of the existence of his mortgage debt only—act which evidently constitutes the third cause for interruption provided by § 1873 of the Code—but he goes beyond in his evident intent, desire, and will, to acknowledge and set forth the state, *on that date, January 10, 1951,* of his preexistent mortgage debt, and he states also in that same third paragraph, the following:

". . . the party hereto *clarifying* that this mortgage just mentioned (1) *is* only *effective* for the sum of *one thousand dollars* of principal, (2) and interest *to be accrued* at the annual rate of nine percent (3) until fully paid."

He publicly acknowledges that the mortgage which he sets forth is effective. That statement is made eleven years after the maturity of the mortgage and four years after assuming its payment upon purchasing. By saying that it *"is . . . effective,"* he acknowledges that it is in force and it is not cancelled, that as the owner of the encumbered property, he owes it and is bound to pay it.

In clarifying "for the sum of one thousand dollars of principal," when in that same third paragraph he had stated that it was executed "originally for the amount of one thousand two hundred and forty dollars," is to fix the amount of the principal *different from that which appears in the mortgage deed and in the registry.* He makes, for the first time, a balance of the principal. Instead of $1,240, he "clarifies" that the debt is only $1,000.

In "clarifying" that the mortgage is only "effective" as far as the *"interest to be drawn"* is concerned, he acknowledges that up to January 10, 1951, the interest was paid and nothing was owed thereof; the design of that statement could not be other than to let the new creditor, Soto, know that he, the mortgagor, paid all the interest accrued up to that date and that he only had to satisfy the interest *"to be accrued"* up to the full payment of the debt. It was equivalent to saying that he was a responsible debtor.

That was his documentary, final, and unequivocal statement, which facilitated that the new creditor would lend him $3,000. If the principal of the first mortgage was reduced to $1,000 and no interest was owed, the property enjoyed a loan margin of $5,000, since in that deed it had been granted a value of $6,000, in clause "F," in case of its sale at public auction.

Such "clarification" is made when, on that date, the real and actually owed balance was $1,240 of principal, and $1,116 of interest for the ten years elapsed since the contractual maturity. However, through his own "clarification" it

was then $1,000 of principal and no interest, because only the "interest to be accrued at the rate of nine percent until fully paid" would be paid.

■ And if the last interest was paid in December 1950, as the debtor meant when he executed the second mortgage in January 1951, then the 20 years prescription, pursuant to § 1870 of the Civil Code only ". . . runs from the last payment . . . of interest."[4]

In other words, with such acknowledgment of the payment of the previous accrued interest, debtor Toro Asencio fixed the maturity of the prescriptive term on December 31, 1970, day to come.

It is true that the detailed relation which the debtor made of the execution of the mortgage debt in the third paragraph of the expository part of that deed, coincides in substance with the contents of the entry in the registry of the first mortgage. We refer, of course, to the first part of the text of

---

[4] We were not present at the hearing of the appeal held on November 18, 1969.

In that hearing, in the part concerning the payment of the interest, the counsel for appellant mortgagor, according to the record, stated the following:

"Twenty-five years have elapsed since it originally matured. No interest was ever paid by any of the debtors, neither by the original debtor nor by the acquiring debtor."

When one of the judges observed: "As to the extension of the prescriptive term grounded on the payment of interest, there does not appear any payment in the registry."

Said appellant's counsel, the only one present at the hearing of the case, argued:

"Oh no. There must be a judicial pronouncement because this is a question of fact. Because it might be that the debtor says, 'I have never paid interest,' having paid them, or that the creditor says, 'I have collected interest,' without the latter having been paid in order to defeat one of them and for the other to win the suit. *That is the practice. Each one alleges what he deems proper for himself.* What benefits his interests. . . . The payment of the interest cannot appear in the registry because those are statements which take place through daily life without the intervention of a notary or anything else. The interest paid with a check, in cash or receipt, or which are deposited in court, therefore it fails to cause, it has no impact in the registry. . . ."

said third paragraph, which starts with the words "Deponent . . . states" and ends up precisely with the phrase "said mortgage . . . and its entry in the Registry of Property."

However, § 1873, in providing, in part, that the prescription of the actions is interrupted *"by any act of acknowledgment* of the debt by the debtor," does not make any exception with those debts appearing in the registry of property. If such exception would exist, what would prevent the same to extend to every debt, lien, or encumbrance appearing in any public instrument? That would be practically tantamount to leaving outside § 1873, as interrupting cause, the acknowledgment of the recorded obligations, especially the mortgage obligations. That interrupting cause would be limited to those obligations contracted orally or through private documents.

Now then, the "clarifying clause" at the end of that third paragraph, which we repeat, says:

". . . the party hereto *clarifying* [not the notary] that this mortgage just set forth *is* only *effective for the sum of one thousand dollars of principal,* and interest *to be accrued* at the annual rate of nine percent until fully paid." (Italics ours.)

does not constitute in any manner "a statement of the entries on the state of liens and encumbrances."

Do the entries say that the mortgage *is effective for the sum of one thousand dollars* of principal? It does not say so. What it says with regard to the principal is that it amounts to one thousand two hundred and forty dollars ($1,240). On January 10, 1951, in our opinion, the correct capital of the mortgage was $1,180, on the basis of the then permissible contractual interest.

Do those entries also say that the interest up to that day was paid and that it was only proper to pay *the interest to be accrued?* That is not stated there, either.

When something is made clear, everything that disturbs the clearness or transparency of such thing is dissipated or removed; the previous manifestations or expressions are

clarified and explained. Then, the debtor in that deed clarified, freely and voluntarily, that the capital of the mortgage credit, *which he acknowledged therein in all its details,* was not of $1,240, as it appeared from the mortgage deed and also from the registry of property, but of $1,000; clarification which obviously benefited him as to the payment of the principal and of the interest, and that it was designed to facilitate the obtention of the new loan, which he was not going to use either, to honor the paternal obligation of 1939.

In arguing his case, the counsel of the debtor-appellant stated the following:

"And the statement *made by the notary* upon the execution of the other mortgage to the effect that there was a mortgage *pending payment,* using the terms used by Judge Vera Mercado himself." (Italics ours.)

Neither did Notary Miguel A. del Toro make such statement, nor did Judge Vera Mercado affirm that the notary had uttered it.

The terms used by the trial judge in his order were the following:

"(2) Subsequently, and on January 10, 1951, defendant Ricarter [*sic*] Toro Asencio executed a mortgage in favor of Juan del Carmen Soto, by public deed, *wherein it is set forth that the mortgage in favor of Miguel Carlo Pabón is only effective for the amount of $1,000 of principal.*

"In the court's opinion, these actions constitute acts of acknowledgment of the debt on the part of the mortgagor which interrupted the prescriptive term of 20 years of § 1864 of the Civil Code in connection with § 1873 of that same legal body."

So that, in no manner whatsoever, does such *"clarifying clause"* of the debtor repeat any of the circumstances of the registry. On the contrary, such "clarifying clause" seeks to modify unilaterally what arises from the registry, for appellant's benefit, but notwithstanding that it does not fail to be,

together with the first part of the third paragraph, a perfect acknowledgment of the existence of the debt by the debtor.

■  These statements, in the nature of a confession, constitute evidence against their author, under § 1186 of the Code, even though they were made during the execution of the second mortgage in 1951.

■  Because of the interruptory impact of this second acknowledgment, the time gained up to January 10, 1951, was cancelled, and then the vigesimal prescriptive term started to run again until January 10, 1971.

### The Third Interruption

The third interruption, as we said before, consisted of the creditor's extrajudicial claims.

We repeat that the judgment appealed from, but unchallenged, was rendered after both parties, through their respective counsel, on June 25, 1969, in open court, after "an interview in the judge's chambers,"

". . . *authorize the court to render judgment on the pleadings.*"

In the preliminary statement of the case made by the trial court in its findings, it appears that the litigants submitted the case ". . . on the facts alleged by the parties in the *complaint and in the answer* . . ." and also on other evidence stated therein. At page 4 of his petition, appellant contends that in the hearing of the case "the parties submitted the same, as a stipulation, *on the contents of the pleadings (complaint and answer)* of the interrogatories and their answer, etc. . . ."

We already stated that in the complaint for the recovery of the mortgage credit, through ordinary proceedings filed by Mercedes Aymat widow of Carlo, on January 18, 1967— only 16 years from the second acknowledgment—the following allegation, which was fundamental, essential and indis-

pensable, and without which the real action brought would have prescribed irremediably, was made:

". . . in spite of the fact that the aforementioned mortgage has been overdue for many years [not less than 26 years, 11 months, and 17 days, reckoning from February 1, 1940] defendant still owes plaintiff the sum of $1,000, principal of said debt, plus the interest thereon at the annual rate of 9% . . . *despite the multiple steps taken by plaintiff through her son, Miguel Carlo Aymat, to recover the aforementioned mortgage and its interest.*" (Italics ours.)

One month after the complaint was filed, defendant-debtor served an interrogatory on plaintiff, consisting of six questions concerning matters which, judging from his own statements and clarifications in the deed of January 1951, except perhaps the second question, he knew perfectly and by heart.

For the purpose of preparing his answer to the complaint in that interrogatory, he is not interested in questioning plaintiff as to how, when, and where, did the latter perform the multiple steps for the recovery of the mortgage debt alleged in the complaint, to know, at least, whether such steps were taken before or after the expiration of any prescriptive term.

Neither is the adversary party requested admissions of fact concerning that allegation; nor is plaintiff's son, mentioned therein, submitted to a deposition on the significant multiple steps for recovery.

Defendant-debtor filed his answer to the complaint on January 10, 1969, about two years after the latter was filed.

Against the fundamental allegation concerning the multiple extrajudicial steps for the collection of the debt, knowing its purpose and juridical consequence under § 1873 of the Code, *nothing to the contrary was alleged or stated in his answer.*

Never did he ask permission to amend his answer in the sense of denying, explaining, or neutralizing that fundamen-

tal allegation of the complaint; nor did he request in the hearing of the case to be allowed to offer evidence against that allegation which already bound him in all its procedural virtuality, because he had not denied the same before.

Under those circumstances, upon submitting his case on the *allegations of the complaint and the answer*, defendant very well knew that he had impliedly accepted that the cause of action filed against him was in full force, not only on account of his own acts of acknowledgment, but also because of those multiple steps taken by the creditor for the collection, which he did not deny.

*Plaintiff did not have to offer or furnish evidence in order to establish or prove those steps for the collection.*[5]

### The Fourth Interruption

It is constituted by the filing, in due time and in correct procedural manner, of the complaint for the recovery of the mortgage debt through the mixed, real, and personal action of the ordinary proceedings, on January 18, 1967, *that is to say, about four years before the maturity of the 20-year period* established by § 1864 of the Code and Art. 134 of the Law.

It is true that when the complaint was filed by the holder of the mortgage credit against the owner of the encumbered property, Toro Asencio's second request to cancel the entry was pending in the registry.

But it is also true that said complaint was filed in the Mayagüez Part of the Superior Court, *about two years after* the date—February 2, 1965—when the registrar himself had refused the cancellation in the registry of the same mortgage credit requested by Toro Asencio on November 6, 1964,

---

[5] Steps for the collection could have been taken by the heirs of Miguel Carlo Pabón, as of February 1946, on the one hand, and on the other hand, even before the division, by Mercedes Aymat, who was entitled to half of that credit as community property.

relying on said Art. 388-B. Said first decision of the registrar refusing cancellation became final and unappealable because Toro Asencio did not file any administrative appeal or judicial proceeding against the same.

There was no fundamental difference between the first and the second request. Both invoked the provisions of Art. 388-B of the Law and the assumed prescription of the mortgage credit. Both were presented in the registry, one in 1964 and the other in 1966, that is to say, long before the 20 years had elapsed completely, on January 10, 1971.

## The Administrative Appeal
### Positive Activity of the Debtor

Since November 24, 1946, the debtor-appellant developed an activity directed to keep the mortgage credit in force, and through his own acts he effectively interrupts the prescriptive term and places its maturity on January 10, 1971.

His father gave him money—$1,000—for the payment of the principal. He did not pay. Somewhat later, in 1951, he took $3,000 as a loan secured by a second mortgage. He did not pay either.

### Negative Activity of the Debtor

On November 6, 1964, he continued his activity, but then, it is not for the purpose of maintaining the mortgage action alive, but to extinguish the same. He insisted in obtaining its extinction without any cost whatsoever. Without paying principal, without satisfying interest, without liquidating the credit for the costs, expenses, and fees, secured by his property.

He forgot then, that he himself had presented or made someone present at the registry the copy of deed No. 207 of 1946, through which he bought the encumbered property, acknowledging the preexisting mortgage, receiving $1,000

from his parents, the vendors, with the obligation to pay the matured mortgage, and that everything appeared in the registry.

He also forgot his second acknowledgment of the existence of the debt of January 1951, his direct, clear, and precise "statements and clarifications" with regard to that mortgage credit which he bound himself to settle, that he had stated that he owed it for being the owner of the mortgaged property, but that "it is effective" only as to $1,000 of principal and the *"interest to be accrued"* until fully paid. He also forgot that a copy of deed No. 5, of January 10, 1951, concerning the execution of the second mortgage, had been recorded in the registry and that his minute and detailed second public and authentic acknowledgment of the existence of the mortgage debt contracted by his parents in favor of Miguel Carlo Pabón, and especially his significant statement to the effect that on that day of January 1951 he was only bound to pay the *"interest to be accrued until fully paid,"* was entered therein.

In other words, it clearly appeared from the registry that any prescriptive term had been interrupted or cancelled in January 1951, through an act of the debtor himself, and that, consequently, he could not avail himself of the power granted by Art. 388-B to request the cancellation of the mortgage credit.

On that date, November 6, 1964, *only 13 years and some months* after the second acknowledgment, debtor Toro Asencio presented at the registry his first petition to cancel the mortgage credit for *having been overdue for more than 20 years,* invoking the provisions of Art. 388-B of the Mortgage Law, added on August 29, 1923 by Act No. 12, approved on that date, and which in the pertinent paragraphs reads:

"Any natural or artificial person, who is the owner of real estate encumbered by mortgage liens overdue for twenty (20) years or constituted for that time if they have no term, may

file with the part of the Superior Court where such property, or the greater part thereof, is located, a petition requesting the cancellation of said mortgage, and the judge of said court shall order the citation of the creditor to appear in said court . . . to show cause why said mortgage should not be cancelled.

".     .     .     .     .     .     .     .

"On the lapse of one year from the date on which this Act takes effect and on petition of the aforesaid interested parties, registrars shall cancel the mortgage referred to in this section, without need of any notice whatever, if the filing of suit to recover the same or the subsistence of such liens is not shown in the registry."

The Registrar of San Germán, to whom the petition was made, proceeded to pass upon the petition, and noticing what was already entered in his books in connection with the mortgage credit, refused to cancel its entry through decision of February 2, 1965, the text of which is as follows:

"The mortgage for $1,240 of principal, in favor of Miguel Carlo Pabón, which appears from the enclosed 17th entry, is sought to be cancelled, whereas through a petition signed on November 6, 1964 by the present owner of that property, Ricartter [*sic*] Toro Asencio, of age, single, industrialist, and resident of Cabo Rojo, authenticated on that same date under affidavit No. 19,055, before Notary Enrique Báez García, where it is alleged that said mortgage matured on November first, 1941, 23 years having elapsed since its maturity; it prescribed and it does not appear from the registry that the term (of), I mean, for the prosecution of the (prescriptive) action, I mean, for the recovery of the mortgage has been interrupted, the cancellation of which is requested. BY VIRTUE THEREOF, but noting that in the vigesimal entry of the property appearing at folio 151 of this volume, entered on January 18, 1947, by virtue of which the present owner of this property acquired, through purchase from the spouses José Toro Martínez and Filomena Asencio Irizarry, original debtors of the mortgage sought to be cancelled, it was stated:—'This sale is performed for the sum of $4,000, the property of this number, and both for five thousand five hundred dollars, from which total sum the vendor

leaves the sum of $1,000 in the possession of the vendee, for the latter to cover and pay the mortgage in favor of Miguel Carlo Pabón, which encumbers this property'; and noting, also, that in the 24th entry of the property, appearing at folio 121, verso of volume 113 of Cabo Rojo, in which the present owner of the property and debtor of the mortgage sought to be cancelled, Rickártter Toro Asencio executed a mortgage in favor of Juan del Carmen Soto, by virtue of deed number five, executed on January 10, 1951, before Notary Miguel A. del Toro, it was stated: 'That the mortgage in favor of Miguel Carlo Pabón *is* only effective for the amount of $1,000 of principal,' statements which constitute acts of acknowledgment of the debt by the debtor and which interrupted the prescriptive term fixed by law, according to the decision in the case of Soto v. Registrar, volume 51, page 230 of the Puerto Rico Reports of the Supreme Court of Puerto Rico, I DENY HEREBY THE CANCELLATION REQUESTED, because since the date when the prescription was interrupted, until the date when the instrument herein involved was filed at the registry, the term of 20 years fixed by Art. 388-B of the Mortgage Law has not elapsed, and instead I enter the corresponding cautionary notice for the time fixed by law. And accordingly, I sign these presents in San Germán, on February 2, 1965. Fees:—$1.50—Act No. 67/1963. (SGD.) JUAN JUAN TORO, Registrar."

Against this denial, as we said before, Toro Asencio did not file any administrative or judicial appeal. He accepted it, therefore the same becoming final.

*This decision was entered by the registrar on the margin of entry No. 17, appearing at folio 148, verso of volume 70 of Cabo Rojo, property No. 508, according to certificate in the record.*

Two years after filing the first petition, that is to say, on November 30, 1966, the debtor, Toro Asencio, tries again to obtain the cancellation of the mortgage in the registry under the same Art. 388-B. But again he makes a wrong calculation of the prescriptive term. Computing it from November 28, 1946, when he purchased the encumbered property and bound himself to pay the mortgage or he finds that on

November 30, 1966—forgetting, of course, everything that happened—20 years with 2 days have elapsed, not after the maturity of the mortgage, *but after the first acknowledgment of the existence of the mortgage debt performed on November 28, 1946*, accepting thus that in 1946, upon purchasing and binding himself to pay the mortgage, *that produced legally the first interruption of the prescription*. The second petition was authenticated before the same notary, and on the following day, December 1, 1966, he filed the same at the registry.

He forgot, of course, the acknowledgment of January 10, 1951, which had fixed the final prescriptive day at January 10, 1971. He forgot, also, that he had accepted the note of refusal of February 2, 1965, concerning his first petition, which he limited himself now to reproduce with an unimportant difference, that is to say, that instead of only some 13 years having elapsed from the second interruption, now only some 16 years had elapsed, but not the complete, whole, and uninterrupted 20 years inexorably required by law.

The registrar, consistent with his first denial and relying on the entries in the registry, among which was the impliedly confessed payment of the interest up to January 1951, denies again the cancellation of the mortgage credit,

". . . because it is noted that since the date when the prescription was interrupted, until the date when this instrument was presented at the registry, *the 20-year period* fixed by Art. 388-B of the Mortgage Law *has not elapsed.* . . ."

The law should not allow, nor should the sound principles of law tolerate, that the same person go so many times against his own deeds and scoff at them as many times as it suits his particular interests.

If the registry revealed clear entries of acts of the mortgage debtor himself, which by their natural effects and consequences, in the light of § 1873 were considered as

causes for interruption, preventing the cancellation by prescription, said debtor could not invoke Art. 388-B, notwithstanding the fact that the filing of the complaint for the recovery of the debt or the subsistence of the mortgage were not acknowledged therein. A prescriptive term of uninterrupted 20 years was not applicable to him.

Article 100 of the Law provides that "registrars shall, under their own responsibility, pass on the legality of deeds by virtue of which cancellations may be applied for, and on the capacity of the contracting parties." The lack of a continuous lapse of the entire prescriptive term undoubtedly affected the legality of the action of the registry sought and even Toro Asencio's legal standing to request the same.

### Unavailability of the Remedy

In our opinion, the present appeal filed on April 7, 1967, against the decision of the registrar of the previous March 14, did not lie.

It was not proper because the second untimely petition was a mere repetition of the first petition for cancellation—also untimely—of the same mortgage credit, which had been refused through the first decision of February 2, 1965, from which no appeal was taken.

If the debtor wanted the review thereof, he should have requested it in February 1965. He could not provoke a second refusal so as to review then, within the unextendable period of 20 days, the original decision.

This Court has held that the availability of an administrative appeal does not depend on the nature of the document which is presented, but on the nature of the act which the registrar is requested to perform. *Orta* v. *Registrar*, 60 P.R.R. 768 (1942). Here, the registrar refused to cancel, in February 1965, and some time later he is asked to perform, for the same prescriptive reason which he had concluded

before that did not exist, the same act of cancellation he had refused.

In *González* v. *Registrar*, 75 P.R.R. 344 (1953), it was held that the refusal of a registrar to correct a previous note from which no appeal was timely taken, was not reviewable.

We are not dealing here with a first refusal caused by the lack of certain documents which have been admitted, and later on the same refused document is presented anew accompanied by additional or complementary documents which cure the defect which gave rise to the first refusal, as it happened in the cases of *Catholic Church* v. *Registrar*, 72 P.R.R. 792 (1951) and *Land Authority* v. *Registrar*, 65 P.R.R. 481 (1945).

When a refusal to record has been consented to, the Supreme Court cannot consider a second similar decision which is only a repetition of the first. *Stubbe Bros., Inc.* v. *Registrar*, 39 P.R.R. 432 (1929); *Robles* v. *Registrar*, 46 P.R.R. 12 (1934); *Echavarría et al.* v. *Registrar*, 24 P.R.R. 80 (1916).

Since 1909 we have said that a review or appeal does not lie from the reproduction of a decision refusing admission to record when the original decision is understood to have been accepted, *"for if the incessant renewal of cautionary notices of titles not recorded on account of incurable defects were permitted, the record of perfect titles of other persons would be . . . prevented."* *Barreras* v. *The Registrar of Property*, 15 P.R.R. 542 (1909).

### The Note on the Legality was Correct

The registrar is requested to cancel the mortgage credit for the *uninterrupted lapse* of 20 years from its maturity.

We must accept, of course, that theoretically and abstractly, for the purpose of the registry, much more than 25 years had elapsed since the anticipated maturity of the credit on

February 1, 1940, or from the contractual maturity in November 1941, up to December 1, 1966, when the registrar is requested, for a second time, to cancel on account of prescription.[6]

We must also accept that neither in 1964, nor in 1966, did it appear entered in the registry of property that a complaint for the recovery of the mortgage credit had been filed or any mention as to the subsistence of the same, as it is set forth in the cited Art. 388-B of the Mortgage Law.

But that Art. 388-B does not operate isolatedly and separately, it is a part of the Mortgage Law and its Regulations, and all the articles thereof, are part of the systematic set of legal standards on real property available to us.

The registrar's duty to pass upon documents must be congruent with the Law and the entries in the registry, as we said in *Nido & Cía. S. en C.* v. *Registrar*, 74 P.R.R. 737 (1953); *P.R. Water Resources Authority* v. *Registrar*, 71 P.R.R. 792 (1950); *López* v. *Registrar*, 58 P.R.R. 1 (1941), and other cases.

It is incumbent upon the registrar to pass upon the legality of the documents by virtue of which any entry in the registry is requested, and to determine the capacity of the executing parties upon the facts that appear from the same, as well as from the registry, whether from the entries or from other documents presented or entered therein, for the legal principle compels him to act in such a manner so that only acts which are valid according to law appear in the registry.

When on December 1, 1966, appellant requested the cancellation for the second time, for the apparent lapse of 20 years, said term appeared to be clearly and evidently interrupted because of:

1—The conduct of the mortgagor in the deed of November 1946;

---

[6] Appellant never mentioned in his writings, nor in the hearing, the first petition for cancellation and the refusal thereof in February 1965.

2—The acknowledgment—clarification and statement—of the existence of the debt in the deed of January 10, 1951, and of the *payment of the already accrued interest up to January 1951;* the registrar could not assume that the debtor's formal clarification was false;

3—What was set forth in the note of February 2, 1965, on the margin of entry No. 17 of the property, where both actions for interruption are mentioned.

Those entries in the registry were factors to determine the legality, which the registrar could not disregard. From those entries it clearly appeared that the prescriptive term of 20 years had not completely elapsed.

The foregoing, weighed or appraised objectively, obviously shows that, although it is true that there was certain inactivity on both parties of the mortgage relation involved, the respective periods of inactivity were not sufficiently long as to allow the consolidation of the prescription of the mortgage credit.

The judgment and the decision of the registry appealed from will be affirmed.

Mr. Justice Martínez Muñoz did not participate herein.